**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

REGINALD MEEKS,

*Petitioner,*

vs.

Case No. 08-3074-EFM

DAVID MCKUNE, et al.,

*Respondent.*

**MEMORANDUM AND ORDER**

Before the court is Petitioner Reginald Meeks (Petitioner) writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). For the following reasons, the Court DENIES the motion.

**I. Factual and Procedural Background**

A summary of the facts is taken from the opinion on direct appeal in *State v. Meeks*.[1]

At 9 p.m. on August 21, 2001, the decedent, James Green, his brother Imon (a/k/a Shawn) Wright, Mia Taylor, and Dennis Jennings (a/k/a Rusty) were with Christopher Graves at his home at 647 Troup in Kansas City, Kansas. The defendant, Reginald Meeks, who was a friend of Christopher Graves' brother Jesse, came to the Graves house and demanded an apology from Green regarding a prior incident where Green had shut Meeks' hand in a door. Green refused to apologize.

Meeks challenged Green to fight outside, and Green reluctantly agreed. Meeks went outside first, followed by Green and the others. Green and Meeks fought and wrestled for about 5 minutes. Green then stopped, telling Meeks that he was tired and that they did not need to fight.

[1] 277 Kan. 609, 88 P.3d 789 (2004).

Green's brother, Wright, testified that Meeks continued trying to get to Green, so Wright stepped in to calm Meeks down. As Green was walking away toward his home at 648 Troup, Meeks pulled out a handgun. As everyone scattered, Wright warned Green that Meeks had a gun. Meeks began chasing Green around Wright's car, which was parked on the street.

When Green slipped and fell, Wright threw a brick toward Meeks. Meeks turned and aimed his handgun at Wright, so Wright ran to 647 Troup. As Wright reached the door, he heard two gunshots. After he went inside the house and shut the door, he looked back into the street. He saw his brother, Green, lying on the ground and Meeks standing in front of Green. Meeks then ran away with the gun in his hand.

The other people present testified to similar events. Taylor testified that as Green got up and started to walk away from the fight, Meeks followed him and pulled out a gun. When someone yelled that Meeks had a gun, Green turned around and then began running around Wright's car. Meeks fired several shots, Green fell down, and Meeks ran away.

Jennings testified that after Meeks and Green were wrestling, Meeks pulled out a gun and fired. When Jennings heard the first shot, he ran to his house with Graves.

Wright, Taylor, and Graves were later shown photographic lineups; each one separately identified Meeks as the shooter.

Around 9 p.m., Reverend Lacy Rydell, a neighbor, heard two gunshots and heard Green cry for help. Rydell went to the door and saw Green stooped down in the street behind a car. Rydell then called 911. He saw Green fall to the ground and the other man shoot at Green and then run. Rydell heard five to six gunshots in all.

Two other people in the neighborhood also heard the shots that evening and saw Green running around a car. Barbara Ann Brooks, Green's girlfriend, was at 648 Troup. She testified that when she heard gunshots, she ran to the door and saw a guy chasing Green around the car and shooting him. Cassie Glover, who lived at 650 Troup, heard five or six gunshots and went to her door. She saw Green running around a car, but saw no one else. After running upstairs to lay her stepdaughter down, she returned and saw Green lying on the street.

Officer Terrance Hall was the first police officer to arrive at the scene, appearing approximately 10 minutes after the shooting. He asked Green who shot him, and Green answered, "Meeks shot me." By 9:22 p.m. Green was unconscious; at 10:47 p.m. he was pronounced dead. The coroner found one gunshot wound in the chest from a .25 caliber bullet which missed Green's right lung but pierced his left lung and one of the major veins that drains blood from the arm. He also found several small abrasions. He opined that based upon Green's wound, Green could have remained conscious for 10 to 15 minutes after being shot.

> Detective Terry Zeigler spoke with Meeks on August 27, 2001, 6 days after Green's death. Meeks waived his *Miranda* rights and told Zeigler that he was with his mother at her house at 9 o'clock the night of Green's death. However, his mother, Esther Hawkins, later testified that she worked from 3 p.m. until 11 p.m. that night, that she got home from work around 11:15 p.m., and that she saw Meeks coming down the street. He stayed for only a few minutes.
>
> Despite what Meeks had initially told Detective Ziegler about being with his mother at her house at 9 o'clock the night of Green's death, his theory of defense at the trial was that he was at the Club Uptown that night, not wrestling and shooting Green on Troup. As support, his sister, Ra'meka Meeks, testified that when she was still 19 years old, she went to the Club Uptown with Reginald Meeks, Jason Meeks, and a friend named Mike one weeknight sometime around August 2001. The defendant then testified that the night they had gone to that club was Tuesday, August 21.
>
> However, Norma Harris, the manager and owner of Club Uptown, testified as a State rebuttal witness that her club was only open Thursdays through Saturdays before August 28, 2001. She also testified that the club's video system, which through its video tape might confirm or deny Meeks' defense that he was present, was not in place until the end of January 2002. She also provided summaries of liquor purchases during various months in an attempt to corroborate her testimony that the club was not open on the night of the murder.
>
> The jury convicted Meeks of first-degree premeditated murder, and the court sentenced him to life, without eligibility for parole for 25 years.

Meeks appealed raising five issues. Meeks stated that (1) the trial court committed error in allowing the admission of the victim's statement; (2) the trial court abused its discretion in denying his request for a continuance; (3) the trial court abused its discretion in permitting the jury to hear the entire 911 call; (4) the cumulative effect of trial errors denied him a fair trial; and (5) there was insufficient evidence to establish that the murder was premeditated. The Kansas Supreme Court upheld Meeks' conviction.

Meeks then filed for state post-conviction relief pursuant to K.S.A. § 60-1507. He alleged ineffective assistance of counsel. The district judge held an evidentiary hearing and denied Meeks' motion. The Kansas Court of Appeals affirmed the district court's findings, and the Kansas Supreme

Court denied review.[2]

## II. Standard of Review

The Court's review of Petitioner's habeas motion is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[3] Pursuant to 28 U.S.C. § 2254(d)(1) and (2), the Court may not grant relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial."

The United States Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from our precedent."[4] A state court decision may be an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court] but unreasonably applies that principle to the facts of the prisoner's case."[5] The Court presumes that the state court factual findings are correct absent clear and convincing evidence to the

---

[2]*Meeks v. State*, 2007 WL 570261 (Kan. Ct. App. Feb. 23, 2007)(Unpublished Opinion).

[3]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003). Petitioner contends that AEDPA's due deference standard impedes the federal judiciary's duty to review cases presented to it in violation of Article III and VI of the Constitution. However, in *Williams v. Taylor*, 529 U.S. 362, 378, 120 S.Ct. 1495, 146 L.Ed.2d. 389 (2000), the United States Supreme Court stated that the AEDPA inquiry "relates to the way in which a federal habeas court exercises its duty to decide constitutional questions; the amendment does not alter the underlying grant of jurisdiction in § 2254(a)." As such, AEDPA does not unconstitutionally limit or impede the federal judiciary's duties.

[4]*Williams*, 529 U.S. at 405-06.

[5]*Id.* at 413.

contrary.[6]

## III. Analysis

In his petition for relief, Petitioner alleges (1) that his confrontation rights were violated by admitting the hearsay statement of the victim; (2) his due process rights were violated when the trial court denied his counsel's request for a continuance when a witness changed her statement during trial; (3) his due process rights were violated by the admission into evidence a witness's 911 call; (4) his due process rights were violated because there was insufficient evidence to support his conviction; and (5) ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. The Court will address each claim.

### 1. *Hearsay Statement in Violation of the Confrontation Clause*

Petitioner claims that his constitutional rights were violated because the trial court admitted the hearsay statement of the victim. After receiving a 911 call around 9 p.m on August 21, 2001, approximately ten minutes after the victim was shot, police arrived on the scene. In response to police officer's question of who shot him, the victim stated "Meeks shot me." The victim became unconscious at 9:22 p.m and was pronounced dead at 10:47 p.m. The trial court allowed the statement to be admitted into evidence. The law regarding the admissibility of the victim's statement has changed significantly from the time of trial through the present.

**At trial**

At trial, the state sought to introduce the victim's statement as either a dying declaration, an excited utterance, or a contemporaneous hearsay exception. The trial judge allowed the admission of the victim's statement as a statutory hearsay exception, i.e, a contemporaneous statement. The

[6] 28 U.S.C. § 2254(e)(1); *see also Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

trial judge went through the provisions of K.S.A. § 60-460(d)(3) and found: (1) the declarant was unavailable because he was deceased; (2) the statement was made at a time when the matter had recently been perceived because the incident occurred approximately ten minutes earlier; (3) the declarant's recollection was clear because it was shortly after he was shot and in response to a direct question by a police officer; and (4) the statement was made in good faith prior to the commencement of the action with no incentive to falsify because "it would just be an extraordinarily strange situation where someone who had just been shot would be motivated to tell a police officer that someone other than the shooter shot them." The trial judge did not directly address whether the statement could be considered a dying declaration although he stated that the victim "was breathing heavily, in obvious distress."[7] The statement was admitted at trial.

**On direct review**

On direct appeal, Petitioner alleged that the trial court failed to make the requisite finding that the victim's statement was reliable. While Petitioner's case was on review before the Kansas Supreme Court, the United States Supreme Court decided *Crawford v. Washington*.[8] Although the trial court admitted the statement as a statutory hearsay exception, the Kansas Supreme Court noted that *Crawford* "substantially altered the Confrontation Clause analysis."[9] In *Meeks,* the court noted

---

[7]The Kansas Supreme Court also did not address whether the statement could be considered a dying declaration although the Kansas Supreme Court noted that the *Crawford* court stated that testimonial dying declarations may be a possible exception to a defendant's right to confrontation. *Meeks*, 277 Kan. at 614, 88 P.3d at 793.

[8]541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

[9]*Meeks*, 277 Kan. at 613, 88 P.3d at 793. *Meeks* has since been overruled by *State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006). In the *Davis* opinion, the Kansas Supreme Court stated that "[t]o the extent that the analysis in previous decisions of this court differs from the Confrontation Clause analysis set forth in this opinion, these previous decisions are overruled." *Id.* at 575. The Confrontation Clause analysis in *Davis* explicitly states that "the two prong unavailability and reliability test" is no longer applicable to testimonial statements. *Id.*

that the United States Supreme Court held in *Crawford* that testimonial statements "are barred under the Confrontation Clause unless (1) the witnesses are unavailable and (2) the defendants had prior opportunity to cross-examine those witnesses."[10]

The Kansas Supreme Court, however, did not determine whether the victim's statement was testimonial because it determined that Meeks forfeited his right to confrontation by killing the witness.[11] Forfeiture by wrongdoing "extinguishes confrontation claims on essentially equitable grounds."[12] Relying on *Crawford*, the Kansas Supreme Court found that the forfeiture by wrongdoing doctrine continued to be accepted.[13]

The Kansas Supreme Court noted that the trial court did not make a determination as to whether the victim was unavailable due to defendant's act because that narrow issue was not presented to the trial court.[14] After reviewing the record, the Kansas Supreme Court noted that the victim was unavailable because he was murdered by the defendant. It found that the transcript "reveals that the court did consider Green had been shot in the chest from a range of 4 to 6 feet; that Green was dead; and that at least four witnesses were present when Green told the officer, "Meeks shot me."[15] As such, the Kansas Supreme Court found that by a preponderance of the evidence, the victim could not testify because the defendant murdered him and consequently the defendant

---

[10]*Meeks*, 277 Kan. at 614, 88 P.3d at 793.

[11]*Id*. at 614, 88 P.3d at 793-94. The court noted, however, that the officer "was arguably conducting an interrogation when he asked [the victim] if he knew who shot him, thus making the response testimonial."

[12]*Crawford*, 541 U.S. at 62 (citing *Reynolds v. United States*, 98 U.S. 145, 158-59, 25 L.Ed. 244 (1879)).

[13]*Meeks*, 277 Kan. at 614, 88 P.3d at 794.

[14]*Id.* at 616, 88 P3d. at 794.

[15]*Id.*

forfeited his right of confrontation by wrongdoing and waived any hearsay objections. There was, however, no finding by the Kansas Supreme Court that the victim's absence was due to defendant's intent to prevent the victim from testifying.

**On federal habeas review**

Shortly after Petitioner filed his writ of habeas corpus in this Court, the United States Supreme Court decided *Giles v. California*.[16] In *Giles*, the United States Supreme Court held that the Confrontation Clause did not allow testimonial statements by a murder victim on the basis of forfeiture by wrongdoing unless there was a specific showing that the defendant caused the victim's absence with the intent or purpose of preventing the witness's testimony. Without this showing, the United States Supreme Court determined that testimonial statements are not to be admitted.[17]

**Retroactivity**

As *Giles* was decided after Petitioner's direct appeal was final in 2004, the question is whether *Giles* should be applied retroactively to Petitioner's writ of habeas corpus. Respondent asserts that *Giles* should not be applied retroactively because *Whorton v. Bockting*[18] established that the right to cross examination is not retroactive. However, *Whorton* merely established that *Crawford* did not apply retroactively because it found that *Crawford* announced a new rule and no exceptions to the rule applied.[19] The *Whorton* court stated that *Crawford* was not to be applied to cases on collateral review because *Crawford* announced a new rule as the decision "was not dictated

---

[16] ____ U.S. ____, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).

[17] *Id.* at 2693.

[18] 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

[19] *Id.* at 421.

by the governing precedent existing at the time when respondent's conviction became final. . . ."[20]

Whether a rule announced in a United States Supreme Court decision applies retroactively to cases on collateral review depends on whether the court announced a new rule or stated an old rule.[21] Generally, "[n]ew constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."[22] There are two exceptions to the retroactivity of new rules: (1) if the rule is substantive, or (2) if the rule "is a watershed rule that implicates the fundamental fairness and accuracy of the criminal proceeding."[23] However, if the United States Supreme Court merely stated an old rule in its decision, the rule applies on both direct and collateral review.[24]

"In determining whether a rule is new, a court conducting habeas review 'considers whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution. If not, then the rule is new.'"[25] "A rule is new when it 'breaks new ground or imposes a new obligation on the States or the Federal government' or if it 'was not dictated by precedent existing at the time the defendant's conviction became final.'"[26] "When a decision of [the United

[20] *Id*. at 417.

[21] *Id*. at 416.

[22] *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

[23] *Whorton*, 549 U.S. at 416 (citation omitted).

[24] *Id.*

[25] *Johnson v. McKune*, 288 F.3d 1187, 1196 (10th Cir. 2002)(citing *O'Dell v. Netherland*, 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997)).

[26] *Johnson*, 288 F.3d at 1196 (citing *Teague*, 489 U.S. at 301).

States Supreme Court] merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether the later decision should apply restrospectively."[27]

Here, it appears that the United States Supreme Court announced a new rule.[28] Although the forfeiture by wrongdoing doctrine remains applicable; a determination must be made that the defendant committed the wrongful act for the *purpose* of preventing testimony before the doctrine is applicable. As such, there is a new obligation on the States and Federal government to establish the defendant's intent in committing the wrongful act before the forfeiture by wrongdoing exception may be applicable. Because this is a new obligation, *Giles* promulgated a new rule.

A new rule is not applied retroactively unless the rule was substantive or a "watershed rule."[29] The rule stated in *Giles* was procedural. In addition, a new rule is rarely a watershed rule.[30] For a rule to be a "watershed rule," it must alter an understanding "of the bedrock procedural elements essential to the fairness of a proceeding."[31] This rule did not. Accordingly, because *Giles* promulgated a new rule and neither exception applies, this Court concludes that *Giles* is not retroactive.

---

[27] *United States v. Johnson*, 457 U.S. 537, 549, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

[28] This Court has found two opinions addressing whether *Giles* applies retroactively. In *James v. Marshall*, the Central District of California stated that *Teague* did not render *Giles* inapplicable because *Giles* was not devising a "new rule" but rather applying a centuries-old rule. 2008 WL 4601238, at *17, fn. 6 (C.D. Cal. 2008). In contrast, in *Robinson v. Mississippi*, the Northern District of Mississippi noted the general rule prohibiting retroactive application of newly announced rules and found that those exceptions did not apply. 2008 WL 2954946, at *10, fn. 1 (N.D. Miss. 2008). The facts in *Robinson*, however, indicated that the defendant committed the wrongful act to prevent the witness's testimony. *Id*. Accordingly, even if *Giles* was retroactive, it would be applicable to the facts in *Robinson*. *Id.*

[29] *Whorton*, 549 U.S. at 416.

[30] *Id*. at 419 (stating that *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) is the only case that qualified for this exception).

[31] *Id.* at 420-21.

The question, therefore, for this Court is whether the Kansas Supreme Court's decision was contrary to or an unreasonable application of clearly established Federal law. At the time the Kansas Supreme Court decided defendant's appeal, *Crawford* was controlling and the clearly established Federal law, and the court worked within its confines.[32] The Kansas Supreme Court's interpretation of the forfeiture by wrongdoing doctrine does not appear to be contrary to then existing clearly established law or an unreasonable application of law. The court relied on *Crawford* and *Reynolds* when it invoked the forfeiture of wrongdoing exception.[33] Indeed, in *Crawford*, the United States Supreme Court stated that it accepted the rule of forfeiture by wrongdoing.[34]

In *Meeks,* there was no determination by the trial court as a threshold matter that the defendant committed the wrongful act to prevent the victim from testifying because at the time of trial, *Crawford* had not yet been decided and the prevailing standard for admitting hearsay, even testimonial hearsay, was "reliability."[35] However, the Kansas Supreme Court determined by the record that the trial court had made the implicit finding that the defendant committed the wrongful act.[36] Accordingly, the court determined that because the defendant had committed the wrongful act which rendered the witness unavailable, he forfeited his right to confrontation and waived his hearsay objections.[37]

---

[32]Even though the Kansas Supreme Court subsequently overruled *Meeks*, at the time the case was decided, the Kansas Supreme Court utilized established federal law.

[33]*Meeks,* 277 Kan. at 614, 88 P.3d at 794.

[34]*Crawford,* 541 U.S. at 62.

[35]*Meeks*, 277 Kan. at 613, 88 P.3d. at 793.

[36]*Id.* at 616, 88 P.3d at 794.

[37]*Id.* at 616, 88 P.3d at 795.

Numerous courts subsequent to the *Crawford* decision similarly determined that the forfeiture by wrongdoing doctrine applied regardless of the defendant's motive.[38] For example, in *United States v. Garcia-Meza*,[39] the Sixth Circuit relying on *Crawford*, stated that "[t]he Supreme Court's recent affirmation of the essentially equitable grounds for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on principles of equity, does not permit." The Kansas Supreme Court made a threshold determination that the defendant committed the wrongful act, i.e., murder, that rendered the witness unavailable and found that he forfeited his confrontation rights as a result. The Kansas Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established Federal law, and Petitioner is not entitled to relief on this ground.[40]

---

[38]*See, e.g.*, *State v. Sanchez*, 341 Mont. 240, 177 P.3d 444 (2008); *United States v. Mayhew*, 380 F. Supp. 2d 961 (S.D. Ohio 2005); *State v. Jensen*, 299 Wis.2d 267, 727 N.W.2d 518 (Wis. 2007); *State v. Mason*, 160 Wash.2d 910, 162 P.3d 396 (Wash. 2007); *People v. Giles*, 40 Cal.4th 833, 152 P.3d 433 (2007)(*overruled by Giles*, 128 S.Ct. 2678).

[39]403 F.3d 364, 370-71 (6th Cir. 2005).

[40]Even if *Giles* was retroactive and Petitioner's confrontation rights were violated, "[h]armless error analysis applies to Confrontation Clause cases." *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000)(citations and quotations omitted). "[T]he relevant harmless error analysis is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* Reviewing the entire record, this Court concludes that the overall strength of the State's case was strong and the admission of the statement appears to be cumulative. Four individuals were at the residence when defendant showed up, and all four individuals identified Meeks as the defendant. The record demonstrates that defendant challenged the victim to a fight. Three witnesses testified that immediately after the fight, defendant pulled out a gun and started shooting at the victim. Several other witnesses testified that they saw a man chasing the victim with a gun. The victim fell down in the street and defendant ran away. Had the statement "Meeks shot me" not been admitted into evidence, there would have been at least three witnesses testifying that defendant pulled out a gun and shot at the victim. Petitioner's counsel cross-examined these witnesses about the events that occurred that night, and the jury was able to determine whether these witnesses were truthful. In sum, the evidence against Petitioner was strong. Accordingly, any error in allowing the testimonial statement by the victim was harmless.

**2. *Denial of continuance***

Petitioner claims that his due process rights were violated when the trial court denied his request for a continuance. "To warrant federal habeas relief, the denial of a continuance must constitute not only an abuse of discretion, it must be so arbitrary and fundamentally unfair as to result in a violation of due process."[41] "In determining whether the denial was fundamentally unfair, the court's focus is on the petitioner's need for a continuance and the prejudice or lack of prejudice resulting from its denial."[42]

In this case, the Kansas Supreme Court noted that it was within the trial court's discretion as to whether to grant a continuance.[43] At trial, Petitioner's theory of defense was that he was at a club on the night of the murder. Originally, Petitioner was going to call Norma Harris, owner and manager of Club Uptown, because Petitioner expected Ms. Harris to testify that her club was open on the night of the murder and Petitioner was present. Petitioner's counsel had apparently requested a videotape from the club to confirm or deny Petitioner's presence but was told that the tape had been taped over so he believed that the club had been open on that date.

The state, however, called Ms. Harris as a witness. She testified that the club was not open that night, its video system was not in place until several months after the date of the murder, and she provided summaries of liquor purchases to corroborate her testimony that the club was not open on the date of the murder. Petitioner's attorney was able to cross-examine Ms. Harris and did cross-examine her about the video system and business records. Petitioner's counsel then requested a

---

[41]*Haislip v. Roberts*, 788 F.Supp. 482, 486 (D. Kan. 1992)(citations omitted); *see also Clemons v. McKune,* 183 Fed.. Appx. 733, 736 (10th Cir. 2006)(unpublished.)

[42]*Cook v. McKune*, 2008 WL 2051087, at *5 (D. Kan. 2008)(quotation and citation omitted).

[43]*Meeks*, 277 Kan. at 616, 88 P.3d at 795 (citing *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997)).

continuance to look into the records and determine whether the cameras were operable on the night of the murder.

The trial court denied the request stating that he thought they were "far afield right now from what the issue in this case is. And whether we're going to litigate how much liquor she was buying at any particular time and whether or not there were cameras there or not is just too peripheral to the issues in this case . . . ."[44] The Kansas Supreme Court stated:

> Although Meeks may not have been on notice that his alibi would be rebutted so strongly, he was able to cross-examine Harris. Additionally, if his alibi were true, Meeks certainly would have been able to subpoena club workers and patrons who were at the club on August 21, 2001, especially Jason Meeks and a friend named Mike, whom his sister testified had accompanied them on an August weeknight - to bolster his alibi by testifying in his case in chief. Whether such witnesses could have been found and so testify, however, is in doubt when at least three eyewitnesses identified Meeks as fighting Green and then shooting him to death on Troup Street at the time he claimed to be in the club. Moreover, the defense still would have had to contend with the fact his first alibi, that he was at home with his mother, had already been shaken by her testimony.[45]

It does not appear that Petitioner's need for a continuance was so high that it prejudiced his defense. As the Kansas Supreme Court noted, defense counsel could have called other witnesses to rebut Ms. Harris's testimony. Petitioner's counsel was able to cross-examine Ms. Harris about whether the club was in fact open that night. In addition, the likelihood of Petitioner obtaining additional information regarding a videotape and Ms. Harris's business records demonstrating Petitioner was at the club appears low as numerous witnesses testified that Petitioner was at a different location. This Court cannot find that the trial court abused its discretion in denying the continuance. The failure to grant a continuance did not violate established federal law. As such, Petitioner is not entitled to relief on this ground.

---

[44] *Meeks*, 277 Kan. at 617, 88 P.3d at 795.

[45] *Id.* at 617-18, 88 P.3d at 795-96.

**3. *Admission into evidence the entire 911 call***

Petitioner alleges that his due process rights were violated when the trial court admitted into evidence the entire 911 call made by Lacy Rydell who called the police after hearing the shooting. Petitioner claims it was error to introduce the entire call because it contained screaming and crying in the background. Petitioner contends that the state's introduction of this evidence had no probative value and only served to inflame the passion of the jury.

"Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."[46] "[W]e will not disturb the state court's evidentiary rulings unless the appellant demonstrates that the court's error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."[47]

On direct appeal, the Kansas Supreme Court found that the trial court did not abuse its discretion in allowing the 911 call. In addressing this issue, the Kansas Supreme Court explained that all relevant evidence is admissible but relevant evidence may be excluded if the probative value is substantially outweighed by the risk of unfair prejudice. The court found that the 911 tape contained relevant evidence. Specifically, the court found that the tape conveyed "what was going on at the scene at that moment probably better than any testimony that's being recalled after the fact," and it corroborated the testimony of several witnesses. Ultimately, the Kansas Supreme Court found that the probative value of the evidence outweighed any prejudicial effect and was properly admitted.

---

[46] *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000).

[47] *Donaldson v. Roberts*, 2009 WL 440544, at *7 (D. Kan. 2009)(citations and quotations omitted).

It appears to this Court that the entire 911 call was relevant for a particular purpose, and the probative value outweighed the risk of unfair prejudice. There is no indication of fundamental unfairness, and this Court cannot find that the admission of the 911 call was so grossly prejudicial that it fatally infected the trial and violated Petitioner's due process rights. Accordingly, Petitioner's claim for relief on this ground is denied.

**4. *Sufficient evidence to support conviction***

On direct appeal, Petitioner contended that there was insufficient evidence to support premeditation. Petitioner now claims that there was insufficient evidence to support his conviction. His argument, however, remains the same - that there was insufficient evidence to demonstrate that he had the intention of shooting the victim, and the evidence demonstrates that the killing was done in the heat of passion.

"When we consider the sufficiency of the evidence on a habeas corpus petition, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[48] The Kansas Supreme Court applied a similar standard in making its determination.

Kansas law defines premeditation as "the process of simply thinking about a proposed killing before engaging in the homicidal conduct."[49] The Kansas Supreme Court when reviewing the evidence presented at trial stated:

> Here, the evidence most favorable to the prosecution is that Meeks sought out Green at another's house and insisted that they fight, which Green did reluctantly. After wrestling and fighting with Meeks for 5 minutes, Green stopped the fight, saying he

---

[48] *Brown v. Sirmons*, 515 F.3d 1072, 1088-89 (10th Cir. 2008)(citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

[49] *Clemons* 183 Fed. Appx. at 737 (citing *State v. Rice*, 261 Kan. 567, 932 P.2d 981, 996 (1997)).

> was too tired and that they did not need to fight. As Green walked away, Meeks pursued him and pulled out a handgun, all without provocation. When Green's brother intervened by throwing a brick to distract Meeks, he pointed his handgun at Wright and then continued his pursuit of Green. Although Green sought refuge behind a car, Meeks chased him around the car while shooting approximately five to six times. When Green fell on the ground, Meeks finally and fatally shot him in the chest. Meeks then fled.
>
> At least three witnesses observed not only the wrestling that immediately preceded the shooting, but also the fatal shooting itself. They identified Meeks as the antagonist in both.[50]

The Kansas Supreme Court determined that there was sufficient evidence presented at trial to support premeditated murder. This Court finds that the Kansas Supreme Court's decision is a reasonable application of the law as it noted the essential elements for premeditated murder and found that a rational fact finder could have determined that these elements had been met. Although it appears that Petitioner now argues that his entire conviction is not supported by the evidence, in light of the Kansas Supreme Court's finding that the facts supported premeditated murder, his conviction for murder is also supported. As such, Petitioner is not entitled to relief on this ground.

**5. *Ineffective Assistance of Counsel***

Finally, Petitioner alleges that he was denied effective assistance of counsel. Petitioner states that his counsel was ineffective because he failed to interview and call Jason Hawkins as an alibi witness and failed to properly prepare Ra'meka Meeks prior to calling her as a witness. Petitioner contends that Hawkins would have supported his alibi because Hawkins would have testified that he was with Petitioner at Club Uptown, and Petitioner contends that Ra'meka was not adequately prepared by counsel to testify.

[50] *Meeks*, 277 Kan. at 622, 88 P.3d at 798.

Ineffective assistance of counsel claims are governed by the familiar standard in *Strickland v. Washington*.[51] First, the petitioner must show that his attorney's performance "fell below an objective standard of reasonableness."[52] Second, he must demonstrate that counsel's deficient performance actually prejudiced his defense.[53] "There is a strong presumption that counsel's performance falls within the wide range of professional assistance; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."[54]

In its opinion, the Kansas Court of Appeals set forth the Kansas standard for evaluating ineffective assistance of counsel claims which is identical to the standard stated in *Strickland*.[55] The appellate court noted that the trial court held an evidentiary hearing regarding Petitioner's claim that his counsel failed to call and prepare witnesses in support of his alibi. At this evidentiary hearing, Petitioner's counsel stated that he spoke with Jason Hawkins several times prior to trial. Hawkins informed Petitioner's counsel that Hawkins was at home at the time of the shooting and could only testify about what he was told by other individuals. Hawkins could not clearly recall the events on the night of the shooting. As such, the Kansas Court of Appeals found that substantial evidence supported the trial court's determination that Petitioner's counsel was not ineffective in his representation of Petitioner.

---

[51] 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[52] *Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008)(citing *Strickland*, 466 U.S. at 688, 694).

[53] *Id.*

[54] *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2573, 91 L.Ed.2d 305 (1986)(citations omitted).

[55] *Meeks*, 2007 WL 570261, at *2 (citing *State v. Davis*, 277 Kan. 309, 314, 85 P.3d 1164 2004)).

In addition, Petitioner's counsel indicated that with regard to Ra'meka Meeks, he spoke with her three times before trial. Each time Petitioner's counsel spoke with Ra'meka, she stated that she could not recall the exact date she went to Club Uptown with defendant. The court noted that with the exception of not being able to recall the exact date, Ra'meka's testimony was supportive of defendant's alibi. As such, the Kansas Court of Appeals found that substantial evidence supported the district court's finding that defendant's counsel was not ineffective.

There is no evidence that the appellate court's decision was contrary to clearly established law or an unreasonable application of law. As such, Petitioner's ineffective assistance of counsel claim fails as Petitioner has presented no evidence that his constitutional rights were violated.

**IT IS ACCORDINGLY ORDERED** that Petitioner Reginald Meeks' Motion for Writ of Habeas Corpus be **DENIED.**

**IT IS SO ORDERED.**

Dated this 9th day of April, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE